# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

ARTCRAFT PATTERN WORKS, INC.,

    Plaintiff,

vs.

    Case No. 00-72143
    Hon. Victoria A. Roberts
    Magistrate Judge Carlson

NORTHWEST PATTERN CO.,

    Defendant.

---

Joseph C. Basta (P24645)
Thomas M. Schehr (P54391)
Robert L. Kelly (P34412)
**DYKEMA GOSSETT PLLC**
Attorneys for Plaintiff
400 Renaissance Center
Detroit, Michigan 48243-1668
(313) 568-6592

Arnold S. Weintraub (P22127)
**PLUNKETT & COONEY, P.C.**
Attorneys for Defendant
38505 Woodward, Ste. 3000
Bloomfield Hills, Michigan 48304
(248) 901-4043

---

## DEFENDANT'S RESPONSE TO PLAINTIFF'S PROPOSED MARKMAN CONSTRUCTION



# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

GOVERNING PRINCIPLES ............................................................................... 2

THE CLAIMS IN QUESTION ............................................................................ 4

CONSTRUCTION OF CLAIMS 6 AND 11 ...................................................... 4

CLAIM 1 ................................................................................................................. 6

     "Gauge" ......................................................................................................... 6

     "Reference Marks" and "Alignment Marks" ........................................ 8

     "Align…relative to each other" ................................................................ 12

CLAIM 11 ............................................................................................................ 13

CLAIM 17 AND THE ASSERTED CLAIMS DEPENDENT THEREFROM .......... 13

CLAIM 19 ............................................................................................................ 15

CLAIM 23 ............................................................................................................ 16

CLAIMS 25 AND 26 ........................................................................................... 16

CONCLUSION .................................................................................................... 16

## INTRODUCTION

NOW COMES the Defendant in the above-captioned cause and hereby submits its "RESPONSE TO PLAINTIFF'S PROPOSED MARKMAN CONSTRUCTION" of the patent in suit – United States Patent No. 5,208,995 - "Fixture Gauge and Method of Manufacturing Same", issuing May 11, 1993 to McKendrick (hereinafter the "'995 Patent").

Following a requirement of Magistrate Carlson, Plaintiff and Defendant submitted a joint Claim Construction Chart, i.e., a Markman Chart, showing for each claim in suit the Plaintiff's and the Defendant's proposals, as well as stipulated interpretations. The Markman Chart included: (a) the claim elements in dispute, and (b) the claim elements which, while not in dispute, still needed to be construed.

This Brief presents Defendant's arguments against certain of Plaintiff's proposals, whether presented in the joint Claim Construction Chart, or in "Plaintiff's Claim Construction (Markman) Brief".

Further Defendant's "Index of Authorities" and "Governing Principles", relied upon and presented by Defendant's in their "Brief in Support of Defendant's Proposed Markman Construction", are incorporated herein by reference.

Certain of the "Governing Principles" will be restated herein for the convenience of the Court.

## GOVERNING PRINCIPLES

It is axiomatic within the patent laws that it is a function of the court to interpret the claims. *Markman v. Westview Instruments, Inc.*, 116 S. Ct. 1384, 517 U.S. 370 (1996).

The governing principles which guide the court in rendering its interpretation of the claims, simply stated, is that the Court must first look to the plain meaning of the words of the claim. See, inter alia, *Johnson Worldwide Assoc., Inc. v. Zebco Corp.*, 175 F.3d 985, 50 USPQ 2d 1607 (Fed. Cir. 1999). In so construing the claims, the Court must first look to the intrinsic evidence, i.e. the claims, specification and, if in evidence, the prosecution history. *Gart v. Logitech, Inc.*, 254 F.3d 1334, 59 USPQ 2d 1290 (Fed. Cir. 2000). While the Defendant has advocated and continues to advocate that Claim 1 and the claims dependent therefrom are <u>invalid</u>, (Claims 2-16) the question of invalidity is the subject of a separate argument.[1] However, for Markman construction purposes, Defendant, in following the governing principles of claim construction, submits that its proposed claim construction is the only one which can become the rule of law of this case.

There is a "heavy presumption" that a claim carries its ordinary and customary meaning. *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d at 989, 50 USPQ2d at 1610; accord *Gart*, 254 F.3d at 1341, 59 USPQ2d at 1295; *Kegel Co. v. AMF Bowling, Inc.*, 127 F.3d 1420, 1427, 44 USPQ2d 1123, 1127 (Fed Cir.

---

[1] Before ever attempting to construe the claims, the Court must first determine whether or not Claim 1 and the claims dependent therefrom are valid.

2

1997). The words of a claim will be given their ordinary meaning as understood by one of ordinary skill in the art unless it appears that the inventor used them differently. *Hockerson-Halberstadt, Inc. v. Avia Group Intern, Inc.*, 222 F.3d 951 55 USPQ2d 1491 (Fed Cir. 2000), *Hoganas AB v. Dresser Industries Inc.*, 9 F.3d 948, 951, 28 USPQ2d 1936, 1939 (Fed. Cir. 1993). Most recently, the Federal Circuit held in, *CCS Fitness, Inc. v. Brunswick Corp.* (docket number 01-1139, decided May 2, 2002*) that a claim term "member" had an established meaning and nothing in the intrinsic evidence narrowed that claims ordinary meaning.

Dictionary definitions may also establish a claim term's ordinary meaning although technically not intrinsic evidence. *Rexnord Corp, v. Laitram Corp.*, 274 F.3d 1336, 1334, 60 USPQ2d 1851, 1855 (Fed. Cir. 2001) (using Random House Unabridged Dictionary to provide the ordinary meaning of "portion"); *Renishaw PLC v. Marposs Societa' Per Azioni*, 158 F.3d 1243, 1250, 48 USPQ2d 1117, 1122 (Fed Cir. 1998) (noting that the meaning of a claim term may come from a "relevant dictionary" so long as the definition does not fly "in the face of the patent disclosure"); *Kegel*, 127 F.3d at 1427, 44 USPQ2d at 1127 (using Webster's Third New International Dictionary to define the term "assembly");

In *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 n. 6, 39 USPQ2d 1573, 1580, n. 6 (Fed. Cir. 1996) the CAFC stated:

> "Although technical treatises and dictionaries fall within the category of extrinsic evidence, as they do not form a part of an integrated patent

---

* 2002 WL 837593 (Fed Cir. 2002)

3

document, they are worthy of special note. Judges are free to consult such resources at any time to better understand the underlying technology and may also rely on dictionary definitions when construing claim terms so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents."

The exception to the "plain meaning" rule is invoked under the following situations: (1) the patentee acted as his own lexicographer and clearly sets forth a definition of the disputed claim term in the specification or the prosecution history, e.g., *Johnson Worldwide*, 175 F.3d at 990, 50 USPQ2d at 1610; (2) if the intrinsic evidence shows that the patentee distinguished the term from the prior art on the basis of a particular embodiment, e.g., *Spectrum Int'l, Inc. v. Sterlite Corp.*, 164 F.3d 1372, 1378, 49 USPQ2d 1065, 1068-69 (Fed Cir 1998); and (3) if the term chosen by the patentee so deprive[s] the claim of clarity as to require resort to other intrinsic evidence for a definite meaning, e.g., *Johnson Worldwide*, supra at 1610; *Gart*, supra, at 1341.

## THE CLAIMS IN QUESTION

Plaintiff is asserting the following Claims: Claim 6, 11, 17, 18, 19, 20, 23, 25, and 26.

## CONSTRUCTION OF CLAIMS 6 AND 11

Plaintiff is asserting Claims 6 and 11. Both of these claims are dependent claims, meaning that they include <u>all</u> of the limitations of the claims preceding. Here, Claim 6 depends from Claim 5, which in turn depends from 4, etc. Therefore, <u>all</u> of the limitations or elements of Claims 1, 2, 3, 4, 5, and 6 are part and parcel of

4

and required elements of Claim 6. Similarly, <u>all</u> of the elements of Claim 1, 2, 3, 4, 5, and 11 are required elements of Claim 11. Necessarily, then, Claim 1 must be interpreted first.

In "Plaintiff's Claim Construction (Markman) Brief" (hereinafter "Plaintiff's Claim Construction"), Plaintiff asserts at Page 5 that no aspect of the invention requires any further explanation. This is not true.

Initially, Plaintiff contends at Page 5 of its' Brief that although certain terms in the claims are not ambiguous, certain terms are in fact "terms of art" for which a definition would be useful. Plaintiff further contends that all references are to intrinsic evidence i.e., the Patent Specification. Incredibly, Plaintiff then has the audacity to go on to argue that Defendant's proposed definitions, also drawn from the Patent Specification, or from a dictionary, are an attempt to rewrite almost every phrase in the claims to incorporate specific preferred embodiments of the Patent into the claims. This is nonsense.

Indeed, from the outset, Defendant points out that as to Claims 1 – 6, the following terms, and possibly others, are **indefinite**: "gauge", "said base", "said gauge base", "alignment marks on said base", "preselected attitude on said base", "said first set of reference marks", and "said blanks". This certainly mocks the Plaintiff's contention that no aspect of the invention requires any further explanation. These and other claim deficiencies are pointed out by Defendant's in the joint Markman Claim Construction Chart.

5

As previously noted in Defendant's "Brief in Support of Defendant's Proposed Markman Construction", before ever attempting to construe the claims, the Court must first determine whether Claim 1 and the claims dependent therefrom are valid.

## CLAIM 1

### "Gauge"

Claim 1 is directed to "A method of manufacturing a gauge for checking features of part with a reference standard". In sub-section (C) of Claim 1, the method requires a step of "producing a plurality of gauge parts including a gauge and a plurality of gauge parts".

As to claim construction, compare the Preamble and sub-section (C) of Claim 1:

> A method of manufacturing a gauge ... (C) producing a plurality of gauge parts including a gauge ..."

In the preamble of Claim 1, the term "gauge" is used to refer to the overall assembly that constitutes the claimed combination, and later in Claim 1, the term "gauge" is used to mean something entirely different. The term "gauge" is used to refer to <u>two different things</u>, which causes the claim to "make no sense" and to be "inoperable".

On Page 6 of Plaintiffs Claim Construction, Plaintiff proposes the following interpretation:

> The term "gauge" refers to an apparatus that provides the "reference standard" against which the manufactured part is compared. [Col. 1, lines 13 – 16; Col. 4, lines 22 – 24}

However, on Page 3 of Plaintiff's Markman Chart, Plaintiff also proposes that:

> The term "a gauge" means "a gauge base [Col. 4, Lines 35-55].
> Other terms in this clause need no interpretation.

As such, Plaintiff argues for <u>two</u> more and distinctly different meanings for the term "gauge" in the same claim. That is, Plaintiff wants this Court to believe that a "gauge base" is an apparatus that provides the reference standard. Of course this is nonsense, the base does no such thing.

On Page 10 of Plaintiff's Claim Construction, Plaintiff argues for a rewrite of sub-section (C):

> "producing a plurality of gauge parts including a gauge **base** and a plurality of gauge blocks." [Col. 4, lines 35-55].
>
> The word "base" in this sentence was clearly omitted as a typographical error and its presence can be easily ascertained from the claim. It can only mean the gauge <u>base</u>."

As noted above, Plaintiff argues for two different meanings of the term "gauge". Under <u>Process Control Corp.</u> v. <u>Hydreclaim Corp.</u>, 190 F. 3d 1550, 52 USPQ 2d 1029 (Fed Cir 1999),.conflicting double uses of a claim may <u>not</u> be corrected by judicial re-writing of the claim to save it from indefiniteness and resulting inoperability.

7

Further, 35 USC Section 112, second paragraph, requires (1) setting forth what the Applicant regards as the invention, and (2) doing so with particularity and distinctness. So a claim with an incomplete phrase violates the second requirement by rendering the claim bounds indefinite. A claim that mistakenly omits a term violates the first requirement.

**A claim cannot be rewritten to make an indefinite term definite.**

### "Reference Marks" and "Alignment Marks"

The first error in Plaintiff's construction is its attempt to ascribe two different meanings to the term "reference marks" in Claim 1. In subsection (D) of Claim 1, Plaintiff proposes that the term "reference marks" is <u>generic</u> to "alignment marks." Thus, Plaintiff's initial proposal is that the term "reference marks" is <u>broader</u> than alignment marks and encompasses alignment marks as well as <u>other</u> types of marks. In other words, by asserting that "reference marks" is "generic," an alignment mark is only <u>one specific type of a reference mark</u>. Yet, in subsection (E) of Claim 1, Plaintiff proposes that reference marks and alignment marks mean the <u>same thing</u>. It is legal error to attempt to ascribe two different meanings to the same phrase in the same claim only where: (a) the written description is sufficient to put a reader on notice of different uses of a term, and (b) those uses are further apparent from publicly available documents referenced in the patent, is it appropriate to depart from the normal rule of construing identical terms in the

8

same manner. *Pitney Bowes, Inc. v. Hewlett Packard Co.*, 182 F. 3d 1298, 51 USPQ 2d 1161 (Fed Cir. 1999).

Here, the claim element "reference marks" is not susceptible to two different constructions. The claim itself makes clear that the term "reference marks" is referring to the same indicia throughout. The language associated with the term in both clauses (D) and (E) is identical. This is borne out by the fact that in the specification, the term "reference marks" is only used in one way, not in a variety of ways and, therefore, the term must be so limited. *Pirelli Cable Corp. v. Ciena Corp.*, 988 F. Supp. 424, 438 (D. Del. 1997).

Furthermore, in the '995 Patent, itself, the Plaintiff provided one meaning for the term "reference marks" and a different meaning for the term "alignment marks." This is pointed out in Defendant's proposal. While understanding that by adopting a constant meaning to a claim element or term this may lead to a nonsensical interpretation, this does not mean that the Court can alter the result. *Process Control Corp. v. Hydreclaim Corp.*, 190 F. 3d 1550, 52 USPQ 2d 1029 (Fed Cir 1999).

At Page 10 of Plaintiff's Claim Construction, Plaintiff refers to the Specification [viz., Col. 12, lines 38-45; and Col. 2, lines 42-63] for support of his contention that the term "reference marks" is generic to "alignment marks". The reference to Column 12, lines 38-45, is a reference to Claim 1. Plaintiff cannot use Claim 1 to define Claim 1. Col. 2, lines 42-63 describes (a) a *method of*

9

*manufacturing* a gauge, comprising the steps of laser *etching reference marks*, and (b) a *gauge assembly*, including *first and second sets of alignment marks*. The Specification does not support the Plaintiff's proposed claim construction.

As an aside, other than in the Claims or at Column 12 as herein above noted, the term **alignment mark** is not identified by number in the Figures and the term is not found or described in the Patent Specification. However, the Patent Specification (Col. 5, lines 57+) does teach the provision of the following myriad of "reference lines" and "reference marks":

> "(I)n addition to the various reference marks ... there is also etched a plurality of perpendicular, vertical and horizontal reference lines 48 and 50, respectively, a border 52, tangent lines 54, segment block square lines 56 segment block labels 58, segment midpoint lines 60, segment square lines 62, segment center lines 64, outside and inside reference lines representing the outside permissible position of the tube 46, and segment miter lines 70. ... The various reference lines mentioned immediately above facilitate rapid, highly accurate placement of the segment blocks 1 – 12 on the base 22 (and sub-base 24) during the assembly process

The "reference marks" are in addition to the "reference lines" Plaintiff contends (Plaintiffs Claim Construction, Page 8) that "alignment marks" are marks to align, as the ordinary, customary meaning of the term provides. This may well be the ordinary meaning of the term "alignment mark" but the Patent Specification excludes from the term "reference marks" the myriad of "reference lines" – including the midpoint lines and miter lines - that enable placement of the segment blocks on the base. Seemingly, "alignment marks" are not embraced as part of the "reference marks".

10

Additionally, sub-section (D) of Claim 1 recites "etching reference marks ... , said etching step including etching a first set of alignment marks ..., and etching a second set of alignment marks ..., said first and second sets of marks defining said reference standard in terms of said three dimension (sic) coordinate system,". The etching step is believed to recite <u>three different and distinct</u> etchings – (1) reference marks, (2) first alignment marks, and (3) second alignment marks. If the term "reference marks" included the "first and second sets of alignment marks" the phrase would read "etching reference marks ... , said ~~etching step including etching~~ *reference marks* including a first set ... and a second set ...". The term "reference marks" is not generic.

Finally, Plaintiff contends at Page 5 of Plaintiff's Claim Construction and Page 12 of the Claim Construction Chart that "first set of reference marks" means "first set of alignment marks", drawing support from the Patent Specification [Col. 12, lines 38-45]. Defendant points out that the term "said first set of reference marks" has <u>no antecedent basis</u> in the claim, rendering the term indefinite and the claim in invalid.

Assuming as the Plaintiff that the term "reference marks" is **generic** and includes **both** the first and the second sets of alignment marks, the claim does not make clear that "reference marks" referred to the "first set of alignment marks". To overcome this clear indefiniteness in the claim, Plaintiff refers to the Patent Specification to **import** a claim saving definition from the Patent Specification.

11

Plaintiff may not import limitations from the Specification into the Claims in order to save a claim. For the Court to rule otherwise would be reversible error.

### "Align...relative to each other"

Claim 1, subsection (D)(1), requires "etching a first set of alignment marks on said **base** and said certain gauge blocks for aligning **said certain** gauge blocks relative to each other on said base." Plaintiff asserts on Page 8 of the Markman Chart that the term "base" means "gauge base". However, Plaintiff also asserts that for Claim 1, the term "gauge" refers to an apparatus that provides the "reference standard" against which the manufactured part is compared.

In fact, the term "base" lacks antecedent basis and thus the claim is indefinite.

A set by its very definition requires at least two elements. The requirement of etching alignment marks on said base and certain of said gauge blocks can be interpreted to mean that one member of the set is on the base and the corresponding member of the set is on a block. However, sub-section (D)(1) modifies this phrase with for "aligning said certain gauge blocks relative to each other on the base". This can only mean the ability to place the blocks in appropriate order with respect to each other, i.e., arrange the blocks in proper sequence to allow comparison of the manufactured part.

Plaintiff argues on Page 8 of the Markman Chart that "alignment marks" do not have to be numerals. Defendant disagrees. Without the reference numerals,

12

the user would have no idea as to what order to place each of the myriad of gauge blocks.

Plaintiff further asserts that the "first set of alignment marks" on the gauge base may be a *footprint* etched on the base for placement of a gauge block. (Claim Construction Chart, Page 8)  There is **no support** in the Patent Specification for the use of a *footprint* for aligning gauge blocks on a base. Moreover, it is legal error to make the contention at this point. The claims are interpreted without reference to the accused product. Further, reference to the Specification clearly teaches that segment block midpoint lines 82 are provided which are intended to be lined up with the segment midpoint line 60 on the base 20. [Specification, Col. 6, lines 32 – 35].

## CLAIM 11

As with Claim 6, Claim 11 depends from Claim 1 and, therefore, for purposes of brevity, the elements of Claim 1 are not repeated herein. In fact, Claim 11 being directly dependent from Claim 1 necessarily incorporates **all of the deficiencies** of Claim 1. Thus, the same interpretation afforded Claim 6 applies with equal force to Claim 11.

## CLAIM 17 AND THE ASSERTED CLAIMS DEPENDENT THEREFROM

Independent method Claim 17 and Claims 18, 19, 20, 23, 25, and 26 which are dependent from Claim 17, are also being asserted and therefore must be

13

construed. Initially, as to those terms appearing in Claim 17, which originally appear in Claim 6 and 11, the same arguments apply, as pointed out below.

In Claim 17, the first claim element to be interpreted is the term "reference marks," found in Subsection (C). This term should be interpreted the same as propounded herein above with respect to Claim 1, i.e. Claim 6.

Another element needing interpretation is the phrase "align said segment blocks relative to each other on said base" found in Subsection (D) of Claim 17. Based upon the specification, it is submitted that this can only mean the <u>numerals</u> which are etched on the blocks and on the base. There is absolutely no other way to interpret this claim element. Absent the numerals, there is no way by which one, not only of ordinary skill in the art, but of any skill in the art, can determine how to place the blocks in proper juxtaposition or adjacency with each other, i.e., in proper sequence.

As demonstrated to the Court during the oral presentation, unmarked blocks have infinite ways by which they can be sequenced. It is only through the use of the numerals that the blocks can be arranged in proper sequence to assemble a fixture gauge that would enable the user to compare a manufactured part with the reference standard. This is the only reasonable interpretation that is consonant with the teachings of the patent.

The only discussion of this aspect of the claimed invention is found at column 1, line 57 et. seq. of the '995 Patent, which recites:

14

"...the first and second sets of <u>alignment</u> marks being respectively aligned with each other to aid in quick, accurate assembly of the parts and to verify that the segment blocks are mounted on the base in proper relationship with each other to define the reference standard." (emphasis added).

Three points must be made. First, it is <u>alignment marks</u>, not the claimed reference marks, which are used for obtaining the proper relationship of the blocks to each other. Secondly, the claim language demands that alignment marks be the same as reference marks, not a species thereof. Third, this is the only discussion in the '995 Patent regarding the aligning of the blocks with alignment marks. There is no discussion in the "Preferred Embodiment" portion of the '995 Patent.

Defendant's proffered interpretation is the only one. Plaintiff does not offer any counter-proposal. Therefore, it is submitted that Defendant's proffered interpretation is the one which must be adopted by the Court.

## CLAIM 19

Claim 19, again, presents the issue of first and second sets of "alignment marks." However, Claim 19 recites that it is the sets of marks which are alignable with each other. In other words, the language of Claim 19 requires that the first and second sets of <u>alignment</u> marks be alignable with each other, <u>not the reference marks</u> of Claim 17. Moreover, the '995 Patent only teaches mid-point lines being alignable with each other and nothing else (See FIG's. 3 and 5, Elements <u>82</u> and <u>60</u> and the numeral "4", and the Patent Specification, Column 6, lines 32 to 35). A mid-point line on a block and a mid-point line on a base may constitute a first set.

15

However, by begging the question of including the numerals as part of the sets, then, this would not enable both the first and second sets of marks to be alignable with each other. The numerals provide alignment of the blocks relative to each other, the numerals on the base enable correspondence not alignments (col. 2, line 57, et. seq.).

### CLAIM 23

Claim 23 creates a much more difficult issue in that it presents the limitation of "using **the** reference marks . . . etched in step (C) as alignment guides" for the part support blocks. Yet, step (C) of Claim 17 requires laser etching reference marks on the base and on the blocks, and mounting the blocks on the base using the reference marks to align the blocks relative to one another on the base. The reference marks on the base <u>cannot</u> be used as alignment guides for the support blocks. Such reference marks never are in any juxtaposition to the part support blocks. The support blocks are never adjacent to the base. The only possible interpretation to be accorded this claim element or claim limitation is that which is propounded by the Defendant herein, i.e. a reference line such as line 78.

### CLAIMS 25 AND 26.

As to Claim 25 and Claim 26, it is evident that the same arguments urged hereinabove apply here. That is, Claim 25 and 26 depend from Claim 17, and each includes all of the deficiencies of Claim 17.

## CONCLUSION

It is respectfully submitted to this Court that while the claims are, per se, invalid and in most instances incapable of construction which does not otherwise lead to a nonsensical result, it is clear that attempting to apply the standards of one skilled in the art that the interpretations proffered by the Defendant is the appropriate one.

Respectfully Submitted,

*[signature]*
Arnold S. Weintraub (P22127)
PLUNKETT & COONEY, P.C.
38505 Woodward Avenue #3000
Bloomfield Hills, MI 48304
(248) 901-4000

Dated: October *18*, 2002

Blmfield.12999.03308.391524-1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARTCRAFT PATTERN WORKS, INC.,

    Plaintiff,

vs.

NORTHWEST PATTERN CO.,

    Defendant.

Case No. 00-72143
Hon. Victoria A. Roberts
Magistrate Judge Carlson

| Joseph C. Basta (P24645)<br>Thomas M. Schehr (P54391)<br>Robert L. Kelly (P34412)<br>DYKEMA GOSSETT PLLC<br>Attorneys for Plaintiff<br>400 Renaissance Center<br>Detroit, Michigan 48243-1668<br>(313) 568-6592 | Arnold S. Weintraub (P22127)<br>Luis Miguel Acosta (P36734)<br>PLUNKETT & COONEY, P.C.<br>Attorneys for Defendant<br>38505 Woodward, Ste. 3000<br>Bloomfield Hills, Michigan 48304<br>(248) 901-4043 |
|---|---|

### CERTIFICATE OF SERVICE

Victoria Mendoza, being first duly sworn, deposes and says that on the 18th day of October, 2002, she served a copy of **Defendant's Response to Plaintiff's Proposed Markman Construction and Proof of Service** upon the following:

Robert L. Kelly, Esq.
Dykema Gossett PLLC
39577 Woodward Avenue, Suite 300
Bloomfield Hills, MI 48304-2820

via facsimile to (248) 203-0763 and also by enclosing a copy of same in a pre-addressed, pre-stamped envelope and depositing same in the United States Mail with postage fully paid thereon.

*/s/ Victoria Mendoza*
VICTORIA MENDOZA

Blmfield.12999.03308.274405-1